IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Alexis Hernandez, Individually and for Others Similarly Situated | § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO._____ |
| v. | § § | Jury Trial Demanded |
| Carniceria Prime Meat Market, LLC; CPMMM Porter, LLC; Reynaldo Ponce; and Branco Ramirez | § § § § | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |
| *Defendants.* | § § § § | |

---

**PLAINTIFF ALEXIS HERNANDEZ'S ORIGINAL COMPLAINT**

---

### INTRODUCTION

1.        This is an unlawful wage theft case. It involves the Defendant companies and their owners refusing to pay their employees for all hours worked. It involves Defendants taking and keeping part of their employees' earned tips. And it involves Defendants refusing to pay their employees overtime wages. Defendants' actions violated the minimum wage, tip, and overtime requirements of the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201, *et seq.*, as amended, and violated Texas common law.

2.      The FLSA was enacted to eliminate "labor standards detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," and to prevent these substandard labor conditions from being used as an "unfair method of competition" against reputable employers. 29 U.S.C. § 202(a). It aims to protect workers "from the evil of 'overwork' as well as 'underpay.'" *Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728, 739 (1981).

3.      Alexis Hernandez brings this collective action suit to recover unpaid wages and other damages from Defendants.

4.      Defendants employed Ms. Hernandez as one of their "Straight Time Workers" (defined below).

5.      Defendants paid all Straight Time Workers, including Ms. Hernandez by the hour.

6.      Defendants' Straight Time Workers regularly work more than forty hours each week.

7.      Defendants misclassified the Straight Time Workers as independent contractors and did not pay them overtime wages.

8.      Instead, Defendants paid the Straight Time Workers the same hourly rate for all hours worked, including the hours worked over forty hours in a single workweek. This is commonly known as "straight time for overtime."

9.      Defendants applied their straight time for overtime scheme to Ms. Hernandez and its other Straight Time Workers regardless of any individualized differences.

10.      Defendants' method of paying straight time for overtime violates the FLSA by depriving all Straight Time Workers of the legally mandated "time and a half" overtime premium.

## PARTIES

11.      Defendant Carniceria Prime Meat Market, LLC ("Carniceria Prime") is a Texas Limited Liability Company that is authorized to do business in Texas, and is currently doing business in Texas. Carniceria Prime may be served with process via service on its registered agent, Oscar Pulido at 24314A Enloe Road, Porter, Texas 77365, or wherever it may be found.

12.      Defendant CPMM Porter, LLC is a Texas Limited Liability Company that is authorized to do business in Texas and is currently doing business in Texas. It may be served with process via service on its registered agent Potentia Advisors, LLC at 8146 Thompson Lake Drive, Missouri City, Texas 77459 or wherever it may be found.

13.      Defendant Reynaldo Ponce is an individual residing in Harris County, Texas. He may be served with process at his address listed with the Texas Secretary of State at 13322 Chimney Sweep Drive, Houston, Texas 77041, at one of his various places of business, including:

- 20521 FM 529, Unit 108, Cypress, Texas 77433

- 21671 FM 1314, Suite 300, Porter, Texas 77365

- 12647 Tomball Parkway, Suite 400, Houston, Texas 77086

- 17675 SH-105, Conroe, Texas 77306

- 7413 Airline Drive, Suite 600, Houston, Texas 77076

- 2536 Spencer Hwy, Pasadena, Texas 77504

Defendant Reynaldo Ponce may also be served wherever he may be found.

14.     Defendant Branco Ramirez is an individual residing in Harris County, Texas. He may be served with process at his address listed with the Texas Secretary of State at 7222 Bayou Oaks Drive, Houston, Texas 77088, or wherever he may be found.

15.     Plaintiff Alexis Hernandez is an individual residing in Harris County, Texas. Ms. Hernandez's consent form to bring this lawsuit is attached as Exhibit A.

16.     Ms. Hernandez brings this collective action on behalf of herself and all other similarly situated individuals who worked for, or are still working for Defendants, and who were paid straight time for overtime.

17.     The putative FLSA collective of similarly situated employees is defined as follows:

> **All individuals who Carniceria Prime or CPMM Porter, LLC paid the same hourly rate for all hours worked, including the hours worked over forty hours in a single workweek according to their straight time for overtime method at any time during the past three (3) years ("Straight Time Workers").**

## JURISDICTION & VENUE

18.        This Court has original subject matter jurisdiction in this matter under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law—specifically, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. Plaintiff's state law claim forms part of the same case or controversy under Article III of the United States Constitution. Therefore, this Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a). This Court also has personal jurisdiction over all parties to this action.

19.        Venue is proper in this Court as a substantial part of the events forming the basis of this suit occurred in Harris County and Montgomery County, Texas, which are in this District and Division. Alexis Hernandez was an employee of the Defendants and performed work for Defendants in Harris County and Montgomery County, Texas. Defendants are subject to this Court's personal jurisdiction with respect to this civil action. Defendants Carniceria Prime and CPMM Porter, LLC are also headquartered in Montgomery County, Texas. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

## COVERAGE UNDER THE FLSA

20.        At all relevant times, Carniceria Prime was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21.     At all relevant times, CPMM Porter, LLC was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Reynaldo Ponce was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

23.     At all relevant times, Branco Ramirez was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

24.     Carniceria Prime, CPMM Porter, LLC, Reynaldo Ponce, and Branco Ramirez were all together Plaintiff Alexis Hernandez's joint employers.

25.     At all relevant times, Defendant Reynaldo Ponce has acted directly or indirectly in the interest of Carniceria Prime and CPMM Porter, LLC with respect to Plaintiff Alexis Hernandez and the other Straight Time Workers.

26.     At all relevant times, Defendant Branco Ramirez has acted directly or indirectly in the interest of Carniceria Prime and CPMM Porter, LLC with respect to Plaintiff Alexis Hernandez and the other Straight Time Workers.

27.     On information and belief Defendant Reynaldo Ponce has an ownership interest in Carniceria Prime and CPMM Porter, LLC.

28.     On information and belief, Defendant Branco Ramirez has an ownership interest in Carniceria Prime and CPMM Porter, LLC.

29.     At all times relevant to this action, Defendants Reynaldo Ponce and Branco Ramirez exercised operational control over Carniceria Prime and CPMM Porter, LLC.

30.     Defendants  Reynaldo Ponce and Branco Ramirez are currently, and,  upon information  and  belief,  have at all relevant times remained Directors and Managing Members of Carniceria Prime and CPMM Porter, LLC.

31.     Defendants Reynaldo Ponce and Branco Ramirez exercised final authority over all decisions on general business matters of Carniceria Prime and CPMM Porter, LLC.  Defendants Reynaldo Ponce and Branco Ramirez  controlled  Alexis Hernandez's and  other  employees'  conditions of employment.

32.     Defendants Reynaldo Ponce and Branco Ramirez  determined  the  rate and method  of  Ms. Hernandez's  and  other employees' compensation.

33.     At all  relevant  times,  Carniceria  Prime  and  CPMM Porter, LLC were an "enterprise" within the meaning of  Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

34.     At all relevant times, Carniceria Prime and CPMM Porter, LLC were part of an "enterprise engaged in commerce or in the production of  goods for commerce" within the meaning of  Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1).

35.     At  all  relevant  times,  Carniceria Prime and CPMM Porter, LLC have  had employees  engaged  in  commerce  or  in  the production of  goods for commerce, or  employees handling, selling, or  otherwise  working  on goods or materials that were moved  in or produced for commerce. For example, Defendants' employees

regularly processed and sold Japanese wagyu beef, which was imported from Japan. Defendants' employees also regularly processed sales of Defendants' products by handling credit card transactions, thus transmitting information in interstate commerce.

36.    Defendants Carniceria Prime and CPMM Porter, LLC had annual gross volume of sales made or business done of at least $500,000 in each of the past three years.

37.    At all relevant times, Plaintiff Alexis Hernandez and the other Straight Time Workers were "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

38.    At all relevant times, Alexis Hernandez and the other Straight Time Workers were engaged in commerce or in the production of goods for commerce.

39.    Defendants treated Alexis Hernandez and the other Straight Time Workers as employees by controlling their work, dictating their pay, and imposing their employment practices on the Straight Time Workers.

40.    Defendants uniformly paid Ms. Hernandez and their other Straight Time Workers the same hourly rate for all hours worked, including those hours worked above forty (40) in a workweek.

41.      Defendants pay all of their Straight Time Workers straight time for overtime regardless of any alleged individualized factors, such as specific job titles or precise geographic location.

42.      As a result of Defendants' uniform straight time for overtime pay method, Ms. Hernandez and the other Straight Time Workers do not receive overtime pay as required under the FLSA.

43.      Specifically, by paying straight time for overtime, Defendants do not pay Ms. Hernandez and the other Straight Time Workers at least 1.5 times their regular rates of pay for all hours worked over forty in a workweek.

44.      Defendants' uniform straight time for overtime pay method violates the FLSA. 29 U.S.C. § 207(a) & (e).

45.      Defendants also implemented a policy in which they kept 30% of all Straight Time Workers' tips.

46.      Defendants' practice of keeping part of the Straight Time Workers' tips violates the FLSA. 29 U.S.C. § 203 (m)(2)(B); 29 CFR § 531.54 (b).

### ABBREVIATED BACKGROUND & FACTS

47.      "Carniceria Prime is a high-end Meat Market brand headquartered in Houston, TX." https://carniceriaprime.com/pages/about-us

48.      According to its website, Carniceria Prime currently has five locations around the Houston area and one in Arlington, Texas.



49.      All of the locations are doing business as "Carniceria Prime Meat Market, LLC," however several of the locations are registered with the Texas Secretary of State as separate entities.

50.      For example, Carniceria Prime has a location in Porter, Texas. Member Managers Reynaldo Ponce and Branco Ramirez registered Carniceria Prime as a business entity with the State of Texas in 2021.

**TEXAS SECRETARY of STATE**
**JANE NELSON**

#### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 804324663 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | November 23, 2021 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32082024004 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | Carniceria Prime Meat Market LLC | | |
| **Address:** | 3003 BINGLE RD | | |
| | HOUSTON, TX 77055-1011 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES | INITIAL ADDRESS |
|---|---|---|---|---|---|---|

| Last Update | Name | Title | Address |
|---|---|---|---|
| June 13, 2023 | Reynaldo Ponce | Manager | 13322 Chimney Sweep Drive Houston, Texa 77041 USA |
| June 13, 2023 | Reynaldo Ponce | DIRECTOR | 13322 Chimney Sweep Drive Houston, Texa 77041 USA |
| June 13, 2023 | Branco Ramirez | Manger | 7222 Bayou Oaks Drive Houston, Texa 77088 USA |
| June 13, 2023 | Branco Ramirez | DIRECTOR | 7222 Bayou Oaks Drive Houston, Texa 77088 USA |

Then in 2023, Reynaldo Ponce and Branco Ramirez registered CPMM (the initials

of Carniceria Prime Meat Market) Porter, LLC as a separate entity.

**TEXAS SECRETARY of STATE**
**JANE NELSON**

#### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 805169285 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | August 2, 2023 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32091044308 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | CPMM Porter LLC | | |
| **Address:** | 3003 BINGLE RD | | |
| | HOUSTON, TX 77055-1011 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES | INITIAL ADDRESS |
|---|---|---|---|---|---|---|

| Last Update | Name | Title | Address |
|---|---|---|---|
| October 24, 2024 | BRANCO RAMIREZ | MEMBER | 20521 FM 529 RD STE 108 CYPRESS, TX 77433 USA |
| October 24, 2024 | REYNALDO PONCE | MEMBER | 20521 FM 529 RD STE 108 CYPRESS, TX 77433 USA |

51.     In addition to the Carniceria Prime business entity, Ponce and Ramirez

have registered ten other business entities with the same Carniceria Prime Meat

Market initials. These include CPMM Corporate, LLC, and CPMM Delivery, LLC. Ponce and Ramirez are listed as the member managers for each of the eleven different CPMM entities. All except CPMM Cypress, LLC remain in existence at the time of this filing.

This search was performed with the following search parameter:
**ENTITY NAME : CPMM, LLC**

| Mark | Filing Number | Name | Entity Type | Entity Status | Name Type | Name Status |
|------|---------------|------|-------------|---------------|-----------|-------------|
| ○ | 805677017 | CPMM Corporate LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805169285 | CPMM Porter LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805169291 | CPMM Arlington LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805169300 | CPMM 249 LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805206781 | CPMM Airline LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805206897 | CPMM Cypress LLC | Domestic Limited Liability Company (LLC) | Forfeited existence | Legal | Inactive |
| ○ | 805248011 | CPMM McAllen LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805248018 | CPMM Pasadena LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805535753 | CPMM CONROE LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 805677022 | CPMM Delivery LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |

52.     To meet their business objectives, Defendants hired Alexis Hernandez and the other Straight Time Workers to prepare, deliver, and sell their products at their various locations across Texas.

53.     Defendants failed to pay their Straight Time Workers overtime for the hours they worked over forty hours in a workweek.

54.     Defendants also implemented a policy in which they kept 30% of all Straight Time Workers' tips.

55.     Defendants controlled all meaningful aspects of the Straight Time Workers' employment.

56.      Defendants controlled the Straight Time Workers' rate and method of pay.

57.      Defendants controlled the Straight Time Workers' schedules and assignments.

58.      Defendants controlled the Straight Time Workers' work.

59.      Defendants and their personnel required the Straight Time Workers to follow Defendants' policies, procedures, plans, protocols, and specifications.

60.      Defendants and their personnel required Ms. Hernandez and the other Straight Time Workers to adhere to their quality standards.

61.      Defendants and their personnel directed and supervised Ms. Hernandez and the other Straight Time Workers.

62.      Defendants created and implemented standardized plans, procedures, and checklists governing the daily, routine activities performed by Ms. Hernandez and the other Straight Time Workers.

63.      Defendants provided all the tools and equipment that Ms. Hernandez and the other Straight Time Workers used for their respective work at Defendants' meat markets.

64.      Alexis Hernandez and the other Straight Time Workers were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties for Defendants.

65.     Ms. Hernandez and the other Straight Time Workers relied on Defendants for work and compensation.

66.     Ms. Hernandez and the other Straight Time Workers could not subcontract out the work that they were assigned by Defendants.

67.     Ms. Hernandez and the other Straight Time Workers did not market their services while employed by Defendants.

68.     Defendants and their personnel set Ms. Hernandez's and the other Straight Time Workers' work schedules, which effectively prohibited the Straight Time Workers from working other jobs while working for Defendants.

69.     Defendants maintained and maintains control, oversight, and direction of the Straight Time Workers, including, but not limited to, hiring, firing, discipline, and other employment practices.

70.     As a matter of economic reality, Ms. Hernandez and the other Straight Time Workers were Defendants' employees.

71.     From the start of Ms. Hernandez' employment until its end in August 2024, Defendants paid Ms. Hernandez straight time for overtime and kept 30% of all of her earned tips.

72.     Ms. Hernandez regularly worked over forty hours each workweek at Defendants' meat markets.

73.      With the exception of three weeks of employment, for the duration of Ms. Hernandez's employment Defendants paid her $15.00 per hour of work.

74.      Defendants refused to pay Ms. Hernandez anything for at least three full weeks of work in 2024.

75.      Defendants regularly deducted one hour of work from Ms. Hernandez's and the other Straight Time Workers' tracked work hours for "lunch" even when the Straight Time Workers were not allowed or able to take an hour of lunch time off of work.

76.      Defendants regularly refused to pay for the time that Ms. Hernandez and the other Straight Time Workers spent picking up merchandise and delivering it to Defendants' various store locations.

77.      Though exact job titles and job duties may differ, the Straight Time Workers were all subjected to the same or similar straight time for overtime pay method.

78.      For example, at the start of Ms. Hernandez's employment she worked for Defendants as a manager. Defendants began training her at their Porter location as a manager. Later, she opted not to be a manager, and would regularly work as a cashier/counter worker at a smaller location in Conroe.

79.     Regardless of her title, Defendants always paid Ms. Hernandez on an hourly basis and never paid 1.5 times her regular rate for the hours she worked over forty in a workweek.

80.     Ms. Hernandez typically worked from ten hours a day on Tuesdays, Wednesdays, Thursdays, and Sundays, and eleven hours a day on Fridays and Saturdays, totaling roughly 62 hours a week. At times Defendants also directed Ms. Hernandez to pick up merchandise from one meat market location and deliver it to another meat market location outside of her regular work schedule.

81.     Defendants directed Ms. Hernandez to either report her hours worked, or required her to clock in and out (depending on the meat market location).

82.     Defendants knew that Ms. Hernandez worked more than forty hours in the workweek, but chose not to pay her overtime wages for the hours worked over forty in a workweek.

83.     Because of Defendants' method of paying straight time for overtime, Ms. Hernandez did not receive the required "time and one half" when she worked overtime.

84.     Defendants paid their other Straight Time Workers according to the same or similar straight time for overtime method that they imposed on Ms. Hernandez.

85.     Like Ms. Hernandez, Defendants paid their other Straight Time Workers by the hour.

86.     Defendants required all Straight Time Workers to report their hours to Defendants (or their personnel), or required the Straight Time Workers to clock in and out.

87.     Just as Defendants maintain records of the hours that Ms. Hernandez reported, they also maintain records of the hours the other Straight Time Workers reported.

88.     Defendants' records show that the other Straight Time Workers, like Ms. Hernandez, regularly worked more than forty hours in a workweek.

89.     Every Straight Time Worker worked more than forty hours in at least one workweek during the relevant time period.

90.     Defendants knowingly paid all Straight Time Workers the same hourly rate for all hours worked, including hours worked over forty in a single workweek.

91.     Defendants never paid Ms. Hernandez or the other Straight Time Workers on a salary basis. In other words, Defendants did not pay Ms. Hernandez or the other Straight Time Workers a guaranteed sum on a weekly or less frequent basis not subject to reduction based on the quality or quantity of work.

92.     Rather, Defendants only paid an hourly rate for the work that Ms. Hernandez and the other Straight Time Workers worked.

93.     Because Defendants paid all Straight Time Workers on an hourly basis, the workers are all non-exempt employees entitle to premium overtime wages.

94.     Defendants instead willfully violated the FLSA by paying Ms. Hernandez and the other Straight Time Workers straight time for all hours worked over forty in a workweek.

**COLLECTIVE ACTION ALLEGATIONS**

95.     All of the above paragraphs are incorporated here.

96.     Like Alexis Hernandez, the other Straight Time Workers were victimized by Defendants' straight time for overtime method of payment.

97.     Other Straight Time Workers who worked with Alexis Hernandez were subject to Defendants' straight time for overtime method of payment.

98.      Based on her experience with Defendants, Alexis Hernandez is aware that Defendants' straight time for overtime method of payment was imposed on other Straight Time Workers.

99.      The Straight Time Workers are similarly situated in the most relevant respects.

100.    Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime pay.

101.    Any relevant exemption defenses would require Defendants to pay the Straight Time Workers on a "salary basis."

102.    Because Defendants fail the "salary basis" test with respect to the Straight Time Workers, the specific job duties performed by those employees are largely irrelevant.

103.    Therefore, the specific job titles or job locations of the Straight Time Workers do not prevent collective treatment.

104.    Rather, Defendants' uniform straight time for overtime method of payment renders the Straight Time Workers similarly situated for the purpose of determining their right to overtime wages.

105.    Defendants' records reflect the number of hours Ms. Hernandez and the other Straight Time Workers recorded working each week.

106.    Defendants' records also show it paid Ms. Hernandez and the other Straight Time Workers "straight time," instead of "time and a half," for their overtime hours.

107.    The back wages owed to Ms. Hernandez and the other Straight Time Workers for their overtime hours can therefore be calculated using the same formula applied to the same records.

108.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' objective records, and there is no detraction from the common nucleus of liability facts.

109.     The issue of damages does not preclude collective treatment.

110.     Ms. Hernandez's experiences are typical of the experiences of the other Straight Time Workers because they all suffered under the same straight time for overtime scheme.

111.     Ms. Hernandez has no interest contrary to, or in conflict with, the Straight Time Workers that would prevent collective treatment.

112.     Like each Straight Time Worker, Ms. Hernandez has an interest in obtaining the unpaid wages owed under federal law.

113.     Ms. Hernandez and her counsel will fairly and adequately protect the interests of the Straight Time Workers.

114.     A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

115.     Absent this collective action, many Straight Time Workers will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

116.     Further, even if some of the Straight Time Workers could afford individual litigation, it would be unduly burdensome to the judicial system. The multiplicity of

actions would create hardship to the Straight Time Workers, to the Court, and to Defendants.

117.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Workers' claims.

118.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly violated the FLSA with respect to Ms. Hernandez and the other Straight Time Workers.

119.    Defendants' straight time for overtime method of payment deprived Ms. Hernandez and the other Straight Time Workers of the premium overtime wages they are owed under federal law.

120.    There are many similarly situated Straight Time Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

121.    The Straight Time Workers are known to Defendants and are readily identifiable through Defendants' business and personnel records.

### DEFENDANTS' ACTIONS WERE KNOWING, WILLFUL, AND DONE IN RECKLESS DISREGARD OF THE FLSA

122.    All other paragraphs are incorporated here.

123.    Defendants know that they are subject to the FLSA's overtime provisions.

124.     Defendants know the FLSA requires that they pay non-exempt employees, including Alexis Hernandez and the other Straight Time Workers, overtime wages at rats not less than 1.5 times their regular rates of pay for all hours worked over forty in a workweek.

125.     Defendants know that Ms. Hernandez and other Straight Time Workers have worked more than forty hours in at least one workweek during the last three years because it requires workers to report their hours worked, or requires workers to clock in and out at their stores.

126.     Defendants know Ms. Hernandez and the other Straight Time Workers were their hourly employees.

127.     Defendants know that they paid Ms. Hernandez and the other Straight Time Workers on an hourly basis.

128.     When they did pay Ms. Hernandez and the other Straight Time Workers, Defendants know that they paid Ms. Hernandez and the other Straight Time Workers straight time for overtime.

129.     Defendants know that they did not and do not pay Ms. Hernandez and the other Straight Time Workers on a "salary basis."

130.     Defendants know that they did not pay Ms. Hernandez and the other Straight Time Workers any guaranteed salary that is not subject to reduction based on the quantity or quality of work.

131.    Defendants know that their straight time for overtime method of payment did not satisfy the "salary basis" test.

132.    Defendants know that they need to pass the "salary basis" test to qualify for any exemption they could claim with respect to Ms. Hernandez and the other Straight Time Workers.

133.    Defendants' failure to pay Ms. Hernandez and the other Straight Time Workers overtime wages is not reasonable, and was not done in good faith.

134.    Defendants know that they kept 30% of Ms. Hernandez and the other Straight Time Workers' tips.

135.    Defendants know, should know, or showed reckless disregard for whether their conduct described in this Complaint violated the FLSA.

136.    Defendants knowingly, willfully, or in reckless disregard carry out their illegal straight time for overtime method of payment, which deprives all of their Straight Time Workers of premium overtime wages in violation of the FLSA.

### CAUSE OF ACTION: FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

137.    All other paragraphs are incorporated here.

138.    Ms. Hernandez brings her FLSA claims as a collective action on behalf of herself and the other Straight Time Workers.

139.    Defendants violated, and are violating, the FLSA by employing non-exempt employees (Ms. Hernandez and the other Straight Time Workers) in a covered

enterprise for workweeks longer than forty hours without paying these employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they work over forty each workweek.

140.    Defendants' unlawful conduct harmed and continues to harm Ms. Hernandez and the other Straight Time Workers by depriving them of the overtime wages they are owed.

141.    Defendants owe Ms. Hernandez and the other Straight Time Workers the difference between the rate actually paid and the required overtime rate for all hours worked over forty in each workweek—1.5 times their regular rate of pay, based on all remuneration.

142.    Because Defendants knew, should have known, or showed reckless disregard for whether their straight time for overtime method of pay violated the FLSA, Defendants owe these wages for at least the past 3 years.

143.    Defendants are also liable to Ms. Hernandez and the other Straight Time Workers for an additional amount equal to all their unpaid wages as liquidated damages.

144.    Ms. Hernandez and the other Straight Time Workers are also entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**CAUSE OF ACTION: FAILURE TO PAY MINIMUM WAGES UNDER THE FLSA**

145.    The facts stated above constitute a violation of Section 6 of the FLSA, 29

U.S.C. § 206, in that Defendants employed Ms. Hernandez in workweeks in which

they refused to pay her at all, thereby not paying her the required minimum wage.

**CAUSE OF ACTION: BREACH OF CONTRACT**

146.    The facts stated above constitute a breach of contract under Texas

common law in that Defendants failed to pay Ms. Hernandez the compensation

that they promised to pay her in return for her labor.

**JURY DEMAND**

147.    Ms. Hernandez demands a trial by jury.

**RELIEF SOUGHT**

For the above stated reasons, Ms. Hernandez seeks the following relief:

    a.  An Order finding Defendants liable to Ms. Hernandez for all unpaid

        compensation at the agreed upon rates; and

Ms. Hernandez, individually and on behalf of the other Straight Time Workers

seeks the following relief:

    a.  An Order designating this lawsuit as a collective action and authorizing

        notice to the Straight Time Workers, allowing them to join this action

        by filing a written notice of consent;

b.  An Order finding Defendants liable to Ms. Hernandez and the other
    Straight Time Workers for all unpaid overtime wages owed under the
    FLSA, plus liquidated damages in an amount equal to their unpaid
    wages;

c.  A Judgment against Defendants awarding Ms. Hernandez and the other
    Straight Time Workers all their unpaid overtime wages, liquidated
    damages, and any other penalties available under the FLSA

d.  An Order providing Ms. Hernandez and the other Straight Time
    Workers attorneys' fees, costs, and expenses;

e.  Pre-and post- judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.


Respectfully submitted,

*/s/Amanda C. Hernandez*
Amanda C. Hernandez
Attorney-in-charge
Texas State Bar No. 24064411
Southern District Bar No. 1531045

AH Law, PLLC
5718 Westheimer, Suite 1000
Houston, Texas 77057
T: (713) 588-4359
F: (281) 572-5370
amanda@ahfirm.com

*and*

Samantha Martinez
Texas State Bar No. 24026860
Southern District Bar No. 27604
Martinez Firm, PLLC
325 Heights Blvd.
Houston, Texas 77007
T: (713) 333-3270
F: (713) 333-3275
sam@mtzfirm.com